# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2037-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

F.S.,

      Defendant,

and

R.G.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.R.G.,
JR., L.M.G., and Z.J.G.,

      Minors.

_____

Submitted January 10, 2019 – Decided March 13, 2019

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0200-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Janet A. Allegro, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Travis A. Provost, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith A. Pollock, Deputy Public Defender, of counsel; Phyllis G. Warren, Designated Counsel, on the brief).

PER CURIAM

Defendant, R.G. (father) appeals from a December 19, 2017 order of guardianship terminating his parental rights to his three children: A.R.G., Jr. (Adam), L.M.G. (Lindsey), and Z.J.G. (Zahir).[1] We affirm substantially for the reasons set forth in Judge James R. Paganelli's comprehensive and well-reasoned fifty-two page written decision issued with the judgment.

---

[1] We use pseudonyms for the names of the children for ease of reference and to protect the family's identity.

The evidence is set forth in detail in the judge's decision. We summarize the key evidence. F.S.[2] (mother) and father are the parents of eight year-old Adam, seven year-old Lindsey, and four year-old Zahir. Though never married, mother and father were together when the Division of Child Protection and Permanency (Division) became involved in 2015 after father was arrested for simple assault involving mother and her brother. Mother suffered from delusions and psychosis and was using drugs. At the time of the alleged assault she was ostensibly in that state, alleging her brother and the building superintendent were raping her children. Father reported he believed mother's and the children's accusations, prompting his aggressive conduct. The Division permitted the maternal grandmother to take the three children home but later transferred them to a resource home. Findings of neglect were established against the parents as "established."

Father agreed to begin a twenty-six week domestic violence counseling program but was terminated from the program twice before he completed it, and resisted other services ordered by the court, including substance abuse evaluations. He never secured safe and appropriate housing. He was

_____

[2] Mother has not joined in this appeal.

A-2037-17T1

inconsistent with visits and did not demonstrate any understanding of mother's mental illness and its impact on the children.

Mental health professionals evaluated both father and mother. Mother was diagnosed with post-traumatic stress disorder, unspecified psychotic disorder, and possible bi-polar disorder. On September 22, 2015, Dr. Eric Kirschner evaluated father for psychological functioning, parenting ability, and treatment needs. According to Dr. Kirschner, father minimized incidents of domestic violence as well as mother's symptoms of mental illness. Dr. Kirschner opined father had minimal depressive symptoms but had compulsive and histrionic traits; however, he had "appropriate attitudes and beliefs in regards to expectations, empathy, alternatives to corporal punishment, family roles and power-independence." Dr. Kirschner recommended father complete the domestic violence program, be referred for psychiatric evaluation, and maintain stable housing and adequate financial resources.

On February 12, 2016, psychiatrist Dr. Samiris Sostre evaluated father and found him guarded in his responses. Dr. Sostre did not diagnose a major depressive or anxiety disorder but noted father's impaired impulse control. Dr.

Sostre recommended father participate in mother's psychiatric visits so he would learn how mental illness, if untreated, affects the children.[3]

On April 18, 2017, the Division filed a complaint for guardianship of all three children. Dr. Kirschner conducted bonding evaluations with the resource parent and the three children, as well as with father and the three children. Dr. Kirschner noted father lacked adequate housing for his children and, though crediting his progress, the length of time it was taking him to complete the domestic violence program negatively affected the children's ability to achieve permanency. Dr. Kirschner expressed concern about father's stated aspirations of reuniting with mother. Dr. Kirschner opined all children were bonded both with father and the resource parent, and would suffer psychological harm with the loss of either relationship. However, he opined only the resource parent would be capable of mitigating the resulting harm.

Although she expressed commitment to adopt Adam, the resource parent requested he be removed from her home due to behavior problems and because she was "tired of him." On August 28, 2017, Adam was transferred to a treatment home, his fourth placement. The resource parent also expressed

---

[3] This did not materialize because mother was not attending psychiatric treatment.

A-2037-17T1

reservations about adopting Zahir. The Division began considering different adoptive homes for Adam and Zahir through select home adoption, if parental rights were terminated.

In light of this concerning information, the Division asked Dr. Kirschner to reexamine his recommendations. Notwithstanding the uncertain path to adoption, on October 4, 2017, Dr. Kirschner maintained his original recommendation of termination of parental rights followed by select home adoption would not do more harm than good because it would provide permanency.

On August 22, 2017, the Division held a team meeting but neither parent attended. On September 13, 2017, father completed the domestic violence program. The Division warned both parents, given their inconsistent attendance, they would be terminated from the supervised visitation program if they did not attend or confirm their remaining visits.

The Division told father he needed to secure housing independent of mother and made several attempts to schedule an assessment of his home; father never provided a time for such an assessment. When he was later asked about housing plans, father asserted he wanted to rent a two-bedroom apartment, claiming his employer had put money aside for this purpose, but mother told the

6

Division father planned to rent a room in her apartment where their children could live. Though separated, father told the caseworker he wanted it to appear to the children that they were a unified family.

On November 8, November 15, and December 5, 2017, Judge Paganelli conducted a guardianship trial. At trial, the caseworker testified the Division did not expect significant problems locating adoptive homes for Adam and Zahir through select home adoption. Dr. Kirschner testified and opined termination would best provide the children permanency. He expressed concern about father's lack of insight into the risk posed by mother's mental illness. Dr. Kirschner expressed concern that father did not appear cognizant of his independent obligation to keep his children safe in light of mother's mental illness. Father called no witnesses and did not testify.

On December 19, 2017, Judge Paganelli issued a decision terminating the parental rights of father and mother, issued a judgment of guardianship and ordered monthly supervised visitation. In his decision, the judge noted father never secured stable housing, was uncooperative and evasive when the Division tried to assess the suitability of his residence, and never submitted to a substance abuse evaluation despite having been ordered to do so throughout the litigation. Of paramount significance was the judge's determination father had no insight

A-2037-17T1

into the seriousness of mother's mental illness and the risk she posed to the children as evidenced by father's statements and his attempt to pay for a room in the mother's apartment where mother was living so the father and children could live.

Judge Paganelli reviewed the evidence presented at the trial, made factual findings as to each prong of N.J.S.A. 30:4C-15.1(a), and thereafter concluded the Division met by clear and convincing evidence all of the legal requirements for a judgment of guardianship as to the father. The judge's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420 (2012), N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88 (2008), In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of D.M.H., 161 N.J. 365 (1999), and N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591 (1986), and is amply supported by the record. F.M., 211 N.J. at 448-49. In addition, we note the judge gave thoughtful attention to the importance of permanency and stability from the perspective of each of the children's individual needs and circumstances. We affirm substantially for the reasons Judge Paganelli expressed in his cogent written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2037-17T1